**Gregory J. MOORE, Petitioner,**

v.

**Steven BRYANT, Warden, Respondent.**

**No. 00–CV–2119.**

United States District Court,
C.D. Illinois,
Urbana Division.

Dec. 20, 2002.

Martin J. Ryan, Office of Appellate Defender, Springfield, IL, for Plaintiff.

Margaret M. O'Connell, Office of the Attorney General, Chicago, IL, for Defendant.

## ORDER

McCUSKEY, District Judge.

On August 3, 2001, this court entered an Order (# 17) which denied Petitioner's petition under 28 U.S.C. § 2254 for a writ of habeas corpus (# 3) on the basis of procedural default. Petitioner filed a Notice of Appeal, and this court granted his petition for certificate of appealability. On July 9, 2002, the Seventh Circuit issued an Opinion which reversed this court's finding of procedural default, and remanded the case so this court could address the merits of Petitioner's ineffective assistance of counsel claim. *Moore v. Bryant,* 295 F.3d 771 (7th Cir.2002). On August 5, 2002, this court entered an Order (# 37) which ordered Respondent to file a Response to Petitioner's claim of ineffective assistance of counsel. Respondent filed his Answer (# 39) on November 25, 2002. On December 11, 2002, Petitioner filed his Response to Respondent's Answer (# 40). This court has carefully reviewed the arguments of the parties on the merits of Petitioner's claim of ineffective assistance of counsel. Following this careful review, Petitioner's Petition under 28 U.S.C. § 2254 for a writ of habeas corpus (# 3) is GRANTED.

### FACTS

In 1994, when Petitioner was 15 years old, he was charged as an adult with first-degree murder for his involvement in a

shooting. Attorney James Kuehl was appointed to represent him. On May 3, 1995, just before the case was scheduled to go to trial, Petitioner pleaded guilty in exchange for the state's recommendation that he receive the minimum twenty-year prison sentence. The trial court accepted the guilty plea, and Petitioner was sentenced to a term of 20 years' imprisonment. Shortly thereafter, Petitioner filed a motion to withdraw his guilty plea, and the trial court appointed another attorney, Sherman Brown, to represent him. Attorney Brown filed an amended motion to withdraw Petitioner's guilty plea. The motion stated that Petitioner's plea was not knowingly or voluntarily made because, among other things, Kuehl had told him that, if he was convicted after a trial, Illinois' newly enacted good-time credit statute would require that he serve 85% of the sentence imposed. By comparison, Kuehl informed him, if he pleaded guilty immediately, he would serve, under the then-current Illinois law, 50% of a twenty-year sentence. In fact, however, the new good-time statute, 730 Ill. Comp. Stat. 5/3–6–3(a)(2) (West 1996), only applied to offenses committed after its effective date of August 20, 1995, and thus did not apply to Petitioner's 1994 offense.[1]

A hearing was held on Petitioner's amended motion to withdraw his guilty plea on March 8, 1996. Petitioner testified that he told Kuehl that he was innocent of the charge against him. He testified that he met with Kuehl often while preparing for trial and that Kuehl consistently told him that he had a 50/50 chance of winning his case. Petitioner testified that, about a week before trial was to begin, Kuehl told him that he would lose at trial and that a new good-time statute was going into effect on June 1st that would require him to serve 85% of his sentence. Kuehl told him that, if he was convicted, the court would impose a sentence within the range of 25 to 30 years, of which he would have to serve 22 to 27 years. Kuehl told him that if he accepted the state's plea offer, he would only have to serve 10 years of a twenty-year sentence. Kuehl therefore recommended that he accept the state's offer. Petitioner testified that he again told Kuehl that he was innocent. He testified that he was scared at the time. He did not want to accept the offer, but did not know what else to do. Petitioner's mother testified that Petitioner told her he did not commit the crime. She stated that he told her he was going to plead guilty because his attorney advised him he would get less time than he would if he was found guilty.

Attorney Kuehl also testified at the hearing. Kuehl stated:

> I think on July 1st or thereabouts of '95, the good time law changed.

> At the time I was discussing the offer with [Petitioner], it wasn't clear whether that law was going to be retroactive, whether legally it could be retroactive. I had some concerns about it.

> So, in discussing the plea with [Petitioner], that issue came up. I didn't have the statute in front of me. It hadn't become law yet.

> So, for a while, that was an issue, would he have to spend 85 percent of 20 years, 100 percent of 20 years, 50 percent of 20 years. And ... we spent a long time discussing that aspect of it.

---

1. Section 5/3–6–3 of the Unified Code of Corrections was amended by P.A. 89–404 and changed the amount of good conduct credit prisoners serving sentences for certain crimes could receive. 730 Ill. Comp. Stat. 5/3–6–3 (West 1996). This amendment was effective August 20, 1995. However, the Illinois Supreme Court later held that P.A. 89–404 was unconstitutional as it violated the Illinois constitution's single subject clause. *People v. Reedy*, 186 Ill.2d 1, 237 Ill.Dec. 74, 708 N.E.2d 1114 (1999).

Kuehl testified that he was not real confident of a not guilty verdict, but thought they "had a fair chance at a not guilty verdict." Kuehl stated that Petitioner ultimately decided to accept the plea offer, but did so "very reluctantly."

Following the hearing, the trial court denied Petitioner's motion to withdraw his guilty plea. The trial court concluded that Petitioner had entered his plea knowingly and voluntarily. Petitioner appealed to the Illinois Appellate Court, Fourth District. He argued that the trial court abused its discretion by denying his motion to withdraw his guilty plea where Kuehl provided ineffective assistance of counsel. Specifically, Petitioner contended that Kuehl gave him incorrect advice about the changes in section 3–6–3(a)(2) of the Unified Code of Corrections concerning good time credit. The appellate court affirmed his conviction in June 1997. *People v. Moore*, 289 Ill.App.3d 357, 224 Ill.Dec. 468, 681 N.E.2d 1089 (1997). The appellate court noted that Petitioner had waived his ineffective assistance claim by failing to argue it in the trial court. However, the appellate court then went on to reject Petitioner's claim on the merits. The court stated:

> Our review of the record makes clear that the trial court thoroughly and completely admonished [Petitioner] as to the consequences of his guilty plea. [Petitioner's] responses to the court's questions do not reveal any misunderstanding or hesitancy in his decision to plead guilty.
>
> Moreover, even if Kuehl's advice as to good-time credit was incorrect, [Petitioner] has not demonstrated prejudice to him in his decision to plead guilty. The record does not show that any alleged misunderstanding by [Petitioner] or Kuehl regarding good-time credit in any way affected the voluntariness of [Petitioner's] guilty plea.

*Moore*, 224 Ill.Dec. 468, 681 N.E.2d at 1092. Petitioner filed a petition for leave to appeal to the Illinois Supreme Court. The Court denied leave to appeal, but vacated that portion of the appellate court's decision which denied Petitioner presentence credit.

In May 1998, Petitioner filed a timely pro se petition for post-conviction relief under the Illinois Post–Conviction Hearing Act, 725 Ill. Comp. Stat. 5/122–1, et seq. (West 1998). In this petition, Petitioner primarily alleged that he was denied the effective assistance of counsel because of Kuehl's incorrect advice regarding his potential sentence. Petitioner stated that Kuehl's advice concerning the new sentencing law was incorrect because it exaggerated the percentage of the sentence which Petitioner would have to serve if he was convicted after a trial. Petitioner argued that, on its face, "the statute which concerned Kuehl did not apply to the instant offense." Petitioner argued that, as a result, he pled guilty based upon counsel's incorrect advice and would not have pled guilty otherwise. Petitioner attached his sworn affidavit and stated that he pled guilty because of Kuehl's advice concerning the amount of time which he would have to spend in prison if he pled guilty as opposed to being convicted of murder.

The trial court dismissed the petition as frivolous. The court stated that, because the appellate court had addressed this ineffective assistance argument on direct appeal, Petitioner was barred by res judicata from asserting the issue again in his post-conviction petition. In July 1999, the appellate court affirmed. *People v. Moore*, No. 4–98–0487 (unpublished order). The appellate court noted that Petitioner testified at the hearing on his amended motion to withdraw his guilty plea that "his decision to plead guilty was influenced by several factors apart from Kuehl's sentencing

advice, including [his] depression, his fear for his own safety, his desire to leave the juvenile detention center, and Kuehl's opinion that [he] would lose if he proceeded to trial." *Moore,* No. 4–98–0487, slip op. at 6. Petitioner filed a petition for leave to appeal to the Illinois Supreme Court. This petition was denied in October 1999.

## ANALYSIS

On May 8, 2000, Petitioner filed his petition under § 2254 for a writ of habeas corpus (# 3). Petitioner argues that he was denied the effective assistance of counsel because his counsel gave him incorrect legal advice which exaggerated the consequences of going to trial, thus rendering his guilty plea involuntary. As noted, this court entered an Order (# 17) which denied the petition on the basis of procedural default. The Seventh Circuit reversed this decision and specifically stated that Petitioner "did not procedurally default his ineffective assistance of counsel claim." *Moore,* 295 F.3d at 777. The case was remanded so this court could address Petitioner's ineffective assistance of counsel claim on the merits. *Moore,* 295 F.3d at 777.

Respondent has now filed an Answer (# 39) to the petition. Respondent contends that the appellate court's adjudication on the merits of Petitioner's claim was a reasonable application of United States Supreme Court law.[2] Respondent argues that the appellate court identified the proper law regarding ineffective assistance of counsel, the *Strickland* standard, and made a reasonable application of the *Strickland* standard to Petitioner's case in finding that Petitioner's plea was voluntary. Respondent contends that Petitioner

is therefore not entitled to relief pursuant to 28 U.S.C. § 2254(d)(1). Petitioner has filed a Reply and notes that Respondent has made no argument that Kuehl's advice correctly related Illinois law concerning good-time credits. Petitioner argues that he has shown that the appellate court's opinions constituted an unreasonable application of *Strickland* to the facts of this case.

▮▮▮ Because Petitioner filed his habeas petition after April 24, 1996, the petition is reviewed pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Rodriguez v. Scillia,* 193 F.3d 913, 916 (7th Cir.1999). Under the AEDPA, a state prisoner who files for a writ of habeas corpus must establish that the state court proceedings:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Brown v. Sternes,* 304 F.3d 677, 690 (7th Cir.2002), *quoting* 28 U.S.C. § 2254(d). Section 2254(d) sets out a "highly deferential standard for evaluating state-court rulings." *Woodford v. Visciotti,* —— U.S. ——, 123 S.Ct. 357, 360, 154 L.Ed.2d 279 (2002), *quoting Lindh v. Murphy,* 521 U.S. 320, 333 n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). However, a " 'state-court decision that correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case' qualifies as a decision involving an unrea-

---

**2.** This court will not address Respondent's argument in his Answer that, for various reasons, Petitioner's claim is procedurally defaulted. As noted, the Seventh Circuit has held that Petitioner did not procedurally de-

fault his ineffective assistance of counsel claim. This court agrees with Petitioner that Respondent can no longer argue procedural default in this case.

sonable application of clearly established federal law." *Boss v. Pierce,* 263 F.3d 734, 739 (7th Cir.2001), *cert denied,* —— U.S. ——, 122 S.Ct. 1961, 152 L.Ed.2d 1022 (2002), *quoting Williams v. Taylor,* 529 U.S. 362, 407–08, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Reasonableness is judged objectively, not subjectively. *Williams,* 529 U.S. at 409–10, 120 S.Ct. 1495; *Boss,* 263 F.3d at 739. "Therefore, a federal court may not grant habeas corpus relief simply because it has independently concluded that the relevant state court decision misapplies clearly established federal law. The decision's application of Supreme Court precedent must be so erroneous as to be unreasonable." *Boss,* 263 F.3d at 739.

■ Here, Petitioner claims that he was denied the effective assistance of trial counsel. In *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court stated that the benchmark for judging a claim of ineffective assistance of counsel is whether "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." A claim of ineffective assistance of counsel requires a showing that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. The same two-part test set out in *Strickland* applies to challenges to guilty pleas based upon ineffective assistance of counsel. *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Tezak v. United States,* 256 F.3d 702, 712 (7th Cir. 2001). In the case of a guilty plea, the second prong of the *Strickland* test requires the defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59, 106 S.Ct. 366. "A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Woodford,* 123 S.Ct. at 359, *quoting Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. As an applicant for habeas relief, it is Petitioner's burden to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner. *Woodford,* 123 S.Ct. at 360.

■ Petitioner testified at the hearing that, before he pleaded guilty, Kuehl advised him that he would have to serve 85% of his sentence if he went to trial and was found guilty and would only have to serve 50% of his sentence if he pleaded guilty. Kuehl did not contradict Petitioner's testimony on this point and, in fact, agreed that he spent a "long time" discussing with Petitioner the effect of the new statute on the amount of time he would have to serve. There can be absolutely no question that Kuehl's advice was just plain wrong. As noted previously, the statute Kuehl was concerned about did not become effective until August 20, 1995, and did not apply retroactively. *See Barger v. Peters,* 163 Ill.2d 357, 206 Ill.Dec. 170, 645 N.E.2d 175, 176–77 (1994) (statute effecting good time credit could not be applied retroactively without violating prohibition against ex post facto laws). Petitioner correctly points out that Respondent has not even attempted to argue that Kuehl's advice on this point was correct. Moreover, Kuehl's own testimony shows that he had not even read the statute. The evidence further shows that he told Petitioner that the statute was effective either June 1 or July 1, 1995, both of which dates were incorrect. This court has no difficulty concluding, under these circumstances, that the evidence shows that Kuehl's performance was deficient.

Respondent argues that Kuehl's incorrect advice regarding good time credit cannot constitute ineffectiveness because Kuehl had no duty to inform Petitioner of

the collateral consequences of pleading guilty, citing *People v. Huante*, 143 Ill.2d 61, 156 Ill.Dec. 756, 571 N.E.2d 736 (1991). This court agrees with Petitioner that this argument has no merit. The Illinois Supreme Court has noted that the "courts of this state have traditionally recognized that good-time credit is a part of every sentence." *People v. Reedy*, 186 Ill.2d 1, 237 Ill.Dec. 74, 708 N.E.2d 1114, 1116 (1999). Therefore, Kuehl's incorrect advice about good time credit was not advice about "collateral consequences" but was advice about the sentence itself. *See Reedy*, 237 Ill.Dec. 74, 708 N.E.2d at 1116–17. This court therefore concludes that the first prong of the *Strickland* test has been met in this case.

The appellate court concluded that the second prong of the *Strickland* test for ineffective assistance of counsel had not been met. The appellate court stated that, even if Kuehl's advice was incorrect, Petitioner was not prejudiced because "[t]he record does not show that any alleged misunderstanding by [Petitioner] or Kuehl regarding good-time credit in any way affected the voluntariness of [Petitioner's] guilty plea." *Moore* 224 Ill.Dec. 468, 681 N.E.2d at 1092.

The ultimate question this court must answer in this case is whether the appellate court's ruling—that Petitioner was not prejudiced by Kuehl's incorrect advice— "was contrary to, or an unreasonable application of clearly established federal law, as determined by the Supreme Court." *See Boss*, 263 F.3d at 741, *quoting* 28 U.S.C. § 2254(d)(1). In answering this question, this court must consider whether the decision is "at least minimally consistent with the facts and circumstances of the case" or "if it is one of several equally plausible outcomes." *Boss*, 263 F.3d at 742, *quoting Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir.1997), and *Hall v. Washington,*. 106 F.3d 742, 749 (7th Cir.1997). However,

this court should grant the writ of habeas corpus if the appellate court's determination is "at such tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary" as to be unreasonable. *Boss*, 263 F.3d at 742, *quoting Hall*, 106 F.3d at 749.

■ This court concludes that Petitioner's testimony at the hearing clearly showed that his decision to plead guilty was based, in large part, on his attorney's advice that he would only have to serve 10 years if he pled guilty as opposed to 22 to 27 years if he went to trial and was found guilty. The appellate court was certainly correct that other factors influenced Petitioner's decision, including his emotional state and Kuehl's advice regarding his likelihood of succeeding at trial. *See Moore*, No. 4–98–0487, slip op. at 6. However, the testimony showed that Petitioner believed he was innocent and was very reluctant to plead guilty. Petitioner's testimony showed that he had anticipated going to trial and then was faced with the prospect of choosing between the plea agreement, which meant 10 years in prison, and a trial after which, if convicted, he would have to spend an estimated 22 to 27 years in prison. In addition, Petitioner filed his motion to withdraw his guilty plea within weeks of entering the plea. This evidence shows that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *See Hill*, 474 U.S. at 59, 106 S.Ct. 366. In this case, the facts establish a probability that Petitioner would not have pleaded guilty absent Kuehl's incorrect advice which is sufficient to undermine confidence in the outcome. This court must therefore conclude that the appellate court's conclusion that "[t]he record does not show that any alleged misunderstanding by [Petition-

er] or Kuehl regarding good-time credit *in any way* affected the voluntariness of [Petitioner's] guilty plea," *Moore* 224 Ill.Dec. 468, 681 N.E.2d at 1092 (emphasis added), is not supported by the testimony presented at the hearing held in this case. Therefore, this court further concludes that, although the appellate court correctly identified the governing legal rule, the decision of the appellate court was an unreasonable application of clearly established federal law, as determined by the Supreme Court in *Strickland* and *Hill.* Accordingly, this court finds that Petitioner is entitled to relief under 28 U.S.C. § 2254.

IT IS THEREFORE ORDERED THAT:

(1) Petitioner's petition under 28 U.S.C § 2254 for a writ of habeas corpus (# 3) is GRANTED.

(2) Petitioner's conviction is hereby vacated. The State shall have 120 days from the date of the issuance of this Order to release or retry Petitioner.

(3) This case is terminated.